IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEROME WILLIAMS,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5086 |
| | : | |
| **PENN DENTAL MEDICINE,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**MARSTON, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**November 22, 2024**

  Plaintiff Jerome Williams, a convicted prisoner currently incarcerated at SCI Coal Township, initiated this civil action by filing a *pro se* Complaint against Defendant Penn Dental Medicine asserting that he was denied medical attention by its orthodontist department. (Doc. No. 2.) Williams seeks to proceed *in forma pauperis*. (Doc. No. 1.) For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint upon screening. Any federal claims asserted will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

**I. FACTUAL ALLEGATIONS**

  Williams utilized a prisoner complaint form, designated for claims brought pursuant to 42 U.S.C. § 1983, to initiate this *pro se* civil action against Defendant Penn Dental Medicine. (*See* Compl. (Doc. No. 2 at 1, 4.)[1] By way of background for his claims against Penn Dental, Williams asserts that he is an "innocent man wrongfully convicted." (*Id.* at 4.) Specifically, Williams avers that during his criminal trial, a witness testified that he was light skinned with no

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

facial hair and had braces in his mouth. (*Id.*) Williams contends that while he may have had some facial hair, he is brown skinned and never had braces. (*Id.*) Williams has since appealed his conviction, asserting "wrongful description" as one of the claims. (*Id.*) In an attempt "[t]o back up that claim," Williams "needed an orthodontist teeth specialist to prove he never had braces." (*Id.*)

Williams contacted several dentist offices, but none of them were able to determine whether he had previously had braces. (*Id.*) When Williams reached out to "Penn medicine dental school," however, a staff member told him over the phone that one of their experts could determine whether he had ever had braces. (*Id.*) A patient chart was made for Williams, and he paid a $53 consultation fee so that he could "be seen by their dental experts." (*Id.*) His first appointment was scheduled for July 25, 2023, and his "appeal attorney filed the paper work for the court to order the sheriff to transport [him] to his appointment." (*Id.*) Williams contends that the court ordered transport for the July appointment, but the "sheriff department failed to acknowledge" the judge's order and instead transported him back to the DOC rather than allow him to stay at the Curran Fromhold Correctional Facility ("CFCF"), one of the Philadelphia County prisons. (*Id.* at 4–5.) Williams contacted Penn Dental to let them know that he would miss his first appointment. (*Id.* at 5.) During that phone call, he spoke to a "rude" staff member who told him that he could not make an appointment because he was a prisoner. (*Id.*)

Williams called back another time, and a different staff member scheduled an appointment for him on August 18, 2023. (*Id.*) Williams obtained another order for transport with the help of his appellate attorney. (*Id.*) However, when the time came to be transported to the August appointment, the sheriff failed to transport Williams. (*Id.*) Williams was aware that

2

he would not be transported to the appointment before it took place, and he was able to call Penn Dental ahead of time to cancel the August appointment. (*Id.*)

On September 15, 2023, Williams called Penn Dental to schedule a third appointment. (*Id.*) A "rude lady answered the phone" and told him that he could not make any more appointments because "you can only miss 3 appointments in the orthodontist department." (*Id.*) Williams alleges that at the time, he had missed only two appointments. (*Id.*) At some point after his September phone call, Williams learned that Penn Dental mailed his consultation check back to him. (*Id.*)

Williams believes that "penn medicine made up this 3 missed appointments and you will not be seen . . . policy, in order for him not to be seen at all." (*Id.*) Williams contends that he was "railroaded by Penn" and his character was defamed because of the denial of medical attention due to his incarceration. (*Id.* at 5–6.) He alleges that the denial of medical attention has caused him stress and anxiety. (*Id.* at 6.) Williams also avers that he's been subjected to racism because Penn Dental suddenly created a policy preventing him from being seen in the orthodontist department. (*Id.*) He seeks a million dollars in monetary damages as compensation for Penn Dental's "rude professionalism and racism" and because they denied him medical attention. (*Id.* at 4, 6.)

## II.   STANDARD OF REVIEW

The Court will grant Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if it is frivolous, malicious, fails to

---

[2] Because Williams is granted *in forma pauperis* status, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

state a claim, or seeks monetary relief from an immune defendant.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[ ] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [ ] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte").  "A federal court has subject matter jurisdiction over civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011) (*per curiam*) (citing 28 U.S.C. §§ 1331, 1332(a)).  It is Williams's burden to establish that this Court has

subject matter jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015); *see also Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) ("[T]he party asserting jurisdiction must satisfy the 'well-pleaded complaint rule,' which mandates that the grounds for jurisdiction be clear on the face of the pleading that initiates the case." (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–11 (1983))). As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

The Court begins with Williams's federal claims before turning to his claims under state law.

### A.    Federal Law Claims

#### 1.    Claims Pursuant to 42 U.S.C. § 1983

By utilizing a prisoner complaint form designated for civil rights claims, Williams may have intended to assert constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims can be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Williams does not allege that Penn Dental was acting under color of state law, and none of the allegations in the Complaint suggest that it was. As such, Williams cannot maintain federal constitutional claims against the Defendant because it is not a state actor for purposes of § 1983. *See, e.g., Hall v. Horizon House*, 414 F. Supp. 3d 720, 722 (E.D. Pa. 2019) (collecting

cases showing medical facilities are not made state actors by receipt of government funding or imposition of government licensing and regulation); *Pa. Informed Consent Advocs. Inc. v. Univ. of Pa. Health Sys.*, No. 21-4415, 2022 WL 2316648, at *2-*4 (E.D. Pa. June 28, 2022) (concluding that the University of Pennsylvania Health System is not a state actor); *Howard v. Einstein Hosp.,* No. 20-1101, 2020 WL 4584035, at *4 (E.D. Pa. Aug. 10, 2020) (section 1983 "claim against Einstein Medical Center would not be plausible because private hospitals and their employees are generally not 'state actors' subject to liability under § 1983" (citing *Carver v. Plyer*, 115 F. App'x 532, 537 (3d Cir. 2004))); *Chrupcala v. Chester Cnty. Hosp.*, No. 00-6027, 2003 WL 21088476, at *5 (E.D. Pa. Jan. 29, 2003) (concluding that Defendants Chester County Hospital and its privately employed nurse were not state actors, and, therefore, could not face liability under 42 U.S.C. § 1983). Accordingly, to the extent that Williams sought to assert federal constitutional claims, they will be dismissed with prejudice pursuant to § 1915(e)(2)(B).

### 2. Claims Pursuant to 42 U.S.C. § 1981

Construing the Complaint liberally, Williams may be attempting to assert a claim pursuant to 42 U.S.C. § 1981.[3] Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

---

[3] Unlike § 1983, which provides a cause of action only against state actors, § 1981 does not provide a private right of action against state actors and instead applies to private conduct. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (explaining that § 1983 provides "the exclusive remedy for violations of § 1981 by state actors"); *see also Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) ("[A]s the District Court properly noted, § 1981 does not provide a private right of action against state actors.").

42 U.S.C § 1981. 'To establish a claim under § 1981, the plaintiff must allege (1) he is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *White v. Wireman*, No. 16-675, 2018 WL 1278588, at *9 (M.D. Pa. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1251786 (M.D. Pa. Mar. 12, 2018) (quoting *Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 247 (E.D.N.Y. 2013)).

The first two elements of a § 1981 claim require that a plaintiff "belongs to a racial minority" and that the defendants had the "intent to discriminate on the basis of race." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir. 1984); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002). "To state a claim for intentional discrimination, a plaintiff must do more than allege a series of unfortunate events and baldly allege that the defendants discriminated against him." *Abdullah v. Small Bus. Banking Dep't of Bank of Am.* No. 13-0305, 2013 WL 1389755, at *2 (E.D. Pa. Apr. 5, 2013) (dismissing § 1981 claim where amended complaint did not allege, *inter alia*, how defendant would have been aware of plaintiff's race when it chose not to extend loan).

Williams does not allege that he is a member of a racial minority or that any of the conduct giving rise to his claims was prompted by the Defendant's intention to discriminate against him on the basis of race.[4] To the contrary, Williams asserts that he was denied "medical attention due to his incarceration" and was told "over [a] recorded phone" call that he could not

---

[4] Even if the Complaint were liberally construed to satisfy the first element, *i.e.*, that Williams belongs to a racial minority based on his description that he is brown skinned (Doc. No. 2 at 4), there are no allegations in the Complaint that the Defendant was aware of his membership in a racial minority or that it discriminated against him on that basis.

make an appointment "because he's a prisoner." (Doc. No. 2 at 5–6.) Accordingly, this claim is not plausible as pled and will be dismissed with prejudice pursuant to § 1915(e)(2)(B).

**B.      State Law Claims**

To the extent that Williams intended to raise any state law claims such as defamation, the only independent basis for jurisdiction over those claims is 28 U.S.C. § 1332(a).[5] This provision grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

---

[5] The Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims, having dismissed all of Williams's federal claims.

Williams does not allege the state citizenship of the parties. Rather, he provides only a Pennsylvania address for himself and the Defendant, which suggests that both of the parties may be citizens of Pennsylvania. (*See* Doc. No. 2 at 2.) Accordingly, Williams has not alleged a basis for the Court's jurisdiction because he has failed to meet his burden of establishing complete diversity in this case. *See Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020). Because the Complaint fails to allege a basis for diversity jurisdiction, the Court will dismiss any state law defamation claims for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint. Any federal law claims Williams sought to assert will be dismissed with prejudice and without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. The Court concludes that amendment would be futile because Williams cannot cure the noted deficiencies in the Complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend " unless amendment would be inequitable or futile." ). However, the dismissal of any state law claims is without prejudice to Williams refiling any such claims in state court, where federal diversity jurisdiction will not be an issue. A final Order follows, which dismisses this case.